IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERSTATE CHEMICAL COMPANY, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1298 |
| | ) | Judge Cercone |
| INGRAM BARGE COMPANY and T.T. | ) | Magistrate Judge Mitchell |
| COATINGS, INC., | ) | |
|     Defendants. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss for lack of jurisdiction and improper venue filed by defendant T.T. Coatings, Inc. (ECF No. 15) be denied. It is further recommended that the motion to dismiss for improper venue or, in the alternative, to transfer Amended Complaint filed by defendant Ingram Barge Company (ECF No. 24) be granted and that this action be transferred to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1406(a).

II.    Report

Plaintiff, Interstate Chemical Company, Inc. (ICC), brings this action asserting a variety of contractual and tort claims against Defendants, Ingram Barge Company (Ingram) and T.T. Coatings, Inc. (T.T. Coatings), arising out of property damage ICC suffered. ICC hired Ingram to transport approximately 420,000 gallons of methanol by tank barge from Louisiana to ICC's storage facility in Illinois and Ingram hired T.T. Coatings to strip and blow dry acetone from the barge prior to loading it with methanol. But when the shipment of methanol arrived at ICC's facility, it was found to be contaminated with acetone, substantially damaging ICC's property and significantly decreasing its value.

Presently pending before the Court are two motions. T.T. Coatings moves for dismissal of the claims against it on the grounds of lack of personal jurisdiction and improper venue. Ingram also raises the issue of improper venue and moves for dismissal or, in the alternative, transfer of the action to the United States District Court for the Eastern District of Louisiana, where the action could have been brought. For the reasons that follow, T.T. Coatings' motion should be denied, Ingram's motion should be granted and the case should be transferred to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1406.

Facts

Plaintiff alleges that, on or about February 13, 2013, it hired Ingram to provide a barge for purposes of transporting approximately 420,000 gallons of methanol from Louisiana to ICC's warehouse facility and marine river terminal in Channahon, Illinois. ICC has had a long-standing business relationship with Ingram and they communicate via email, phone calls and occasional visits, but do not have formalized contracts. On March 1, 2013, Ingram notified ICC that it would provide Barge JT-1035 to transport ICC's methanol to Illinois after the prior cargo of acetone was stripped and blown dry from the barge. Ingram delivered Barge JT-1035 to the International-Matex Tank Terminals ("IMTT") dock located in St. Rose, Louisiana. Ingram then contracted with T.T. Coatings to strip and blow dry the acetone from the barge, which it purportedly did on March 6, 2013. ICC indicates that the methanol it manufactures must conform to strict criteria in order to meet industry standards and customer expectations and alleges that both Ingram and T.T. Coatings are aware that acetone will contaminate methanol.

On March 8, 2013, the barge was loaded with approximately 420,000 gallons of methanol. ICC claims that after the barge arrived at its port terminal on March 31, 2013, it tested the methanol and discovered that it was contaminated with acetone. Prior to being loaded onto

the barge, the methanol had an acetone presence of less than 10 parts per million (ppm), but upon testing at ICC's terminal after shipment, the methanol had an average acetone presence of 77-109 ppm. In addition, the methanol from the tank barge was discharged into ICC's storage tank, thereby contaminating the methanol that was already in the storage tank (a total of 444,900 gallons). (Am. Compl. ¶¶ 9-10, 17-18, 19-27, 35, 40-48 & Exs. A-G.)[1]

Procedural History

Plaintiff filed this action on September 5, 2013 and on September 27, 2013, it filed an Amended Complaint (ECF No. 4). Diversity jurisdiction is invoked pursuant to 28 U.S.C. § 1332 on the grounds that: Plaintiff is Pennsylvania company with its principal place of business in Hermitage, Pennsylvania; Ingram is a Tennessee company with its principal place of business in Nashville, Tennessee; T.T. Coatings is a Louisiana company with its principal place of business in Covington, Louisiana; and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Am. Compl. ¶¶ 2-5.)

Counts I-V and VIII are alleged against Ingram: Count I alleges a claim of breach of contract, Count II alleges a claim of breach of the covenant of good faith and fair dealing, Count III alleges a claim of breach of warranty, Count IV alleges a claim of violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Count V alleges a claim of fraud in the inducement, and Count VIII alleges a claim of negligence. Count VI alleges a claim of breach of third party beneficiary contract against T.T. Coatings. Count VII alleges a claim of misrepresentation against both Defendants. Finally, Count IX alleges a claim of negligence against T.T. Coatings.

On December 6, 2013, T.T. Coatings filed a motion to dismiss for lack of personal

---

[1] ECF No. 4.

jurisdiction and improper venue (ECF No. 15). On January 3, 2014, Plaintiff filed a brief in opposition (ECF No. 21) and on January 20, 2014, T.T. Coatings filed a reply brief (ECF No. 22). On February 10, 2014, Ingram filed a motion to dismiss for improper venue or, in the alternative, to transfer this case to the United States District Court for the Eastern District of Louisiana (ECF No. 24). On March 24, 2014, Plaintiff filed a brief in opposition (ECF No. 28).[2]

Personal Jurisdiction

"Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" North Penn Gas v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)). The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," although it can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. Carteret Savs. Bank, FA v. Shushan, 954 F.2d 141, 142, n.1 (3d Cir. 1992). See also Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

There are two alternative ways to establish personal jurisdiction. "General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the

---

[2] At a status conference held on January 23, 2014, the undersigned indicated that the parties were to participate in a mediation conference and, if efforts to settle proved unsuccessful, then Plaintiff was to respond to Ingram's motion (ECF No. 23). On March 21, 2014, the parties notified the Court that a mediation was held on March 14, 2014 with all parties and their principals, but was not successful.

4

litigation, are 'continuous and systematic.'" BP Chemicals, Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2853-54 (2011). Plaintiff does not appear to appear to rely on general personal jurisdiction and, as the facts below indicate, there would be no basis for it.

Specific personal jurisdiction arises from a defendant's forum related activities and may be established even where the defendant has not physically appeared in the state but has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 73 (1985) (citations omitted). It is defendant specific. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

As summarized by the Court of Appeals:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

O'Connor v. Shady Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King, 471 U.S. at 472, 476) (footnote omitted).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed.R.Civ.P. 4(k)(1)(A). O'Connor, 496 F.3d at 316. Pennsylvania

5

authorizes its courts to exercise maximum general and specific jurisdiction over corporations and other entities. First, the plaintiff may show general jurisdiction pursuant to 42 Pa. C.S. § 5301(a)(2)(iii) and (a)(3)(iii) by showing "[t]he carrying on of a continuous and systematic part of the general business within this Commonwealth." Second, the plaintiff may show specific jurisdiction pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a) by showing that defendant has engaged in forum related activities, including "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," § 5322(a)(4).

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "only where the contact is sufficient under the Constitution of the United States," 42 Pa. C.S. § 5308, and "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). See Kubik v. Letteri, 614 A.2d 1110, 1114 (Pa. 1992) (following Burger King analysis).

Ingram has conceded, for purposes of the pending motions, that the Court has personal jurisdiction over it based on its minimum contacts with Pennsylvania. (ECF No. 25 at 2, 3.) However, T.T. Coatings contends that it does not have sufficient contacts with Pennsylvania to permit the exercise of personal jurisdiction over it. Plaintiff responds that T.T. Coatings knew it was contracting with and performing work for a Pennsylvania company and that any harm from its acts or omissions would be felt by ICC in Pennsylvania.

Matt Toepfer, the President of T.T. Coatings (Toepfer Aff. ¶ 2),[3] states that: T.T. Coatings is a Louisiana marine company, with main offices in Westwego, Louisiana, which offers vessel repair and cleaning services at its facility at or near Mile Marker 104.5 on the

---

[3] ECF No. 16 Ex. 1.

Mississippi River; that it is neither qualified nor registered to do business in Pennsylvania and does not have any registered agents for service of process in Pennsylvania; that it has never had any offices or employees in Pennsylvania; that it has never conducted any acts in Pennsylvania for purposes of realizing a monetary benefit; that it has never shipped any merchandise directly or indirectly into or through Pennsylvania; that it does not own, use or possess any real property in Pennsylvania; that it has never engaged in any business or profession within Pennsylvania; that it has never contracted to supply services or things in Pennsylvania; that it has never maintained any bank accounts in Pennsylvania; that it does not have a telephone listing or mailing address in Pennsylvania; and that it has never incurred or paid taxes in Pennsylvania. (Toepfer Aff. ¶¶ 3-16.)

He further states that ICC is not now and has never been its client; that T.T. Coatings never entered into any contracts with or for the benefit of ICC and that it never made any representations to ICC about the cleaning of Barge JT-1035; that T.T. Coatings never had any communications with ICC concerning Barge JT-1035 either before or after the alleged incident which forms the basis of this suit; that it had no knowledge concerning how Ingram would use Barge JT-1035 after it cleaned it including the identity of ICC as Ingram's client; and that any alleged act of negligence on the T.T. Coatings in failing to properly clean the barge (which is specifically denied) occurred at T.T. Coatings' facility located at Mile Marker 104.5 on the Mississippi River in or near Westwego, Louisiana. (Toepfer Aff. ¶¶ 17-21.)

The only provision of Pennsylvania's long-arm statute that could potentially apply to this factual situation would be 42 Pa. C.S. § 5322(a)(4), which allows for personal jurisdiction as a result of a defendant's "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." However, "the stretch of this statute has not been

7

extended to include the residual effects of an out-of-state accident to a state resident." Acey v. Schmidt, 2006 WL 1670211, at *3 (W.D. Pa. June 15, 2006) (quoting Williams v. Moody, 1999 WL 79535, at *1 (E.D. Pa. Jan. 22, 1999)). See also Amos by Amos v. Pendry, 810 F. Supp. 146, 149-50 (M.D. Pa. 1992) (plaintiff injured in accident in New Jersey could not establish specific personal jurisdiction in Pennsylvania by contending that his primary injuries occurred not from the accident itself, but as a result of the subsequent inter-operative coagulapathy that occurred in a Pennsylvania hospital); Peek v. Golden Nugget Hotel & Casino, 806 F. Supp. 555, 558 (E.D. Pa. 1992) (Pennsylvania citizen injured in a slip and fall in the defendant's hotel/casino in Nevada failed to establish that her cause of action arose out of the defendant's alleged contacts with the forum, namely brochures displayed in Pennsylvania travel agents' offices); Wims v. Beach Terrace Motor Inn, Inc., 759 F. Supp. 264, 267-68 (E.D. Pa. 1991) (patrons injured at motor inn in New Jersey could not establish personal jurisdiction in Pennsylvania, even when they alleged that they were solicited to visit the motor inn by advertising directed to them in Pennsylvania); Nicholas v. Ashraf, 655 F. Supp. 1418 (W.D. Pa. 1987) (plaintiff treated at West Virginia University Hospital on referral from a treating physician in Pennsylvania did not have a cause of action that arose from defendants' forum-related activities); Garzone v. Kelly, 593 A.2d 1292, 1297-98 (Pa. Super. 1991) (§5322(a)(4) could not be relied on to assert personal jurisdiction over New Jersey resident when auto accident occurred in New Jersey). See also DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84-85 (2d Cir. 2001) (analyzing comparable section of New York long-arm jurisdiction statute and indicating that court should inquire as to the location of the "original event which caused the injury.")

  T.T. Coatings' alleged negligence occurred in Westwego, Louisiana, where Plaintiff contends that it negligently failed to properly remove the acetone from the barge, such that it

contaminated the methanol that was put into the barge for transport to Plaintiff's facility in Illinois. T.T. Coatings does not even have any contacts in Pennsylvania, and therefore Plaintiff's causes of action could not arise out of any forum-related activities by this defendant.

Plaintiff argues that it has not had the benefit of jurisdictional discovery, which would allow it to determine to what extent T.T. Coatings knew that the harm it caused would be felt in Pennsylvania. Plaintiff cites a recent case in which the Court of Appeals stated that that unless a plaintiff's claim is "clearly frivolous," jurisdictional discovery should be allowed. Rocke v. Pebble Beach Co., 541 F. App'x 208, 212 (3d Cir. 2013) (citation omitted). Further, it notes that the court has found jurisdictional discovery particularly appropriate where a defendant is a corporation. Id. (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)). In Rocke, the court found that the plaintiff (a Pennsylvania resident who suffered an injury at the defendant's resort in California) failed to demonstrate contacts supporting either general or specific personal jurisdiction, but allowed the plaintiff to engage in jurisdictional discovery to attempt to demonstrate that she was personally solicited to visit the resort with advertising material that was solely in the custody of the resort.

However, this argument misses the point. "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)). "A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010)(citation omitted).

9

The President of T.T. Coatings has testified that it did not know how Ingram would use Barge JT-1035 after it cleaned it and did not know that ICC was Ingram's client. Plaintiff alleges "upon information and belief" that T.T. Coatings knew that ICC was the third party beneficiary of its contract with Ingram to clean the barge. However, Plaintiff has not explained how this allegation is relevant.

Even if Plaintiff could demonstrate that T.T. Coatings actually knew that that barge it was cleaning would later be used by Ingram (a Tennessee corporation) to transport methanol from Louisiana to Illinois for the benefit of ICC, a Pennsylvania-based company, that fact would not alter the analysis because it still would not establish a connection between T.T. Coatings and Pennsylvania. Plaintiff has not alleged that it was solicited into entering into a contract with T.T. Coatings; it is undisputed that ICC had no contractual relationship with T.T. Coatings at all. Rather, ICC contacted its frequent business partner, Ingram, and requested a barge; Ingram hired T.T. Coatings to clean it. Given the case law cited above, and the fact that Plaintiff cites no cases to the contrary, Plaintiff's attempt to establish personal jurisdiction over T.T. Coatings based on the facts of this case is "clearly frivolous."

In addition, courts have held that to interpret the Pennsylvania long-arm statute in a manner so as to permit a Pennsylvania resident injured in another state to argue that personal jurisdiction could be exercised on the basis of residual or subsequent injuries suffered in Pennsylvania:

> would fly in the face of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and World Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), in that there is no basis on which to find the minimum contacts as required by the due process clause of the Constitution of the United States.

Estoril v. Brown, 556 F. Supp. 153, 155 (E.D. Pa. 1983). See also Bakaj v. Arthur Levine,

D.D.S., P.A., 733 F. Supp. 951, 953 (E.D. Pa. 1990) (patient treated by dentist in New Jersey could not establish jurisdiction based on subsequent suffering in Pennsylvania); Border v. Alex Gup, M.D., Civ. A. No. 87-5142, 1987 WL 26634, at *2 (E.D. Pa. Dec. 7, 1987) (no personal jurisdiction when patient alleged misdiagnosis of condition by Florida doctor requiring subsequent operation in Pennsylvania). Thus, Plaintiff cannot establish personal jurisdiction over T.T. Coatings based on the fact that it suffered or continues to suffer economic loss in Pennsylvania when the actual injury causing the loss occurred in Louisiana.

For all of these reasons, Plaintiff has failed to establish that personal jurisdiction can be asserted over T.T. Coatings. The Court's analysis does not end here, however, because, as explained below, both Defendants have demonstrated that venue is improper in this district. Therefore, rather than dismiss this action, or even Plaintiff's claims against T.T. Coatings, the Court should transfer this action to an appropriate venue, as explained below. The Court can transfer an action even when it lacks personal jurisdiction over a defendant. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).

T.T. Coatings has not sought transfer of this action, but only dismissal. Such a result would not be in the interest of justice because the Court should transfer the claims alleged against Ingram to an appropriate venue in any event and a court should not sever claims if it would result in piecemeal litigation of the same issues in two places. Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 33-34 (3d Cir. 1993) (citation omitted). Therefore, T.T. Coatings' motion to dismiss for lack of personal jurisdiction should be denied.

Venue

The Court of Appeals has held that the defendant challenging venue bears the burden of demonstrating that it is improper. Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir.

11

1982). Venue is proper: 1) where any defendant "resides" if all defendants are residents of the State in which the district is located; 2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or 3) "if there is no district in which an action may otherwise be brought … any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A corporation "resides" in a judicial district if it is subject to personal jurisdiction there. 28 U.S.C. § 1391(c)(2).

As explained above, T.T. Coatings does not "reside" in Pennsylvania because it is not subject to personal jurisdiction. Nor do the facts of this case suggest that a substantial part of the events or omissions giving rise to the claims occurred in Pennsylvania. Rather, as explained above, a substantial part of the events occurred in Westwego, Louisiana. Thus, neither subsection (b)(1) nor subsection (b)(2) applies. Finally, as explained below, the Eastern District of Louisiana is a district in which this action could have been brought and therefore § 1391(b)(3) does not apply. Thus, Defendants have demonstrated that venue in this district is improper.

Transfer under § 1406(a)

Section 1406 provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Transfer under this statute is proper even though the court in which the action was filed lacks personal jurisdiction over a defendant. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962); Lafferty v. St. Riel, 495 F.3d 72, 77 (3d Cir. 2007).[4]

The Eastern District of Louisiana would have personal jurisdiction over T.T. Coatings, a Louisiana corporation, and also over Ingram, which is registered to do business in Louisiana and

---

[4] T.T. Coatings contends otherwise (ECF No. 22 at 5), but cites no authority in support.

has designated a registered agent in Louisiana. (Mecklenborg Aff. ¶¶ 4-5.)[5] It would also be an appropriate venue because a substantial part of the events giving rise to the claims occurred there.

Westwego, Louisiana, where T.T. Coatings allegedly failed to clean the tank barge, is located in Jefferson Parish. The methanol was loaded into the tank barge in St. Rose, which is located in St. Charles Parish. T.T. Coatings has its principal place of business in Covington, which is located in St. Tammany Parish. Ingram's principal business establishment in Louisiana is located in Belle Chasse, which is in Plaquemines Parish. (Mecklenborg Aff. ¶ 6.) All of these parishes are included in the Eastern District of Louisiana. 28 U.S.C. § 98(a). Therefore, the Eastern District of Louisiana is a federal court where this action could have been brought.[6] As noted above, it is in the interest of justice to transfer this entire action to an appropriate venue so that the claims can be resolved in one proceeding.

For these reasons, it is recommended that the motion to dismiss for lack of jurisdiction and improper venue filed by defendant T.T. Coatings, Inc. (ECF No. 15) be denied. It is further recommended that the motion to dismiss for improper venue or, in the alternative, to transfer Amended Complaint filed by defendant Ingram Barge Company (ECF No. 24) be granted and that this action be transferred to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1406(a).

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by April 8, 2014. Any party opposing the objections shall

---

[5] ECF No. 24-2.
[6] In addition, ICC has alleged that the methanol in its storage tank was contaminated when it combined with the methanol from the tank barge. This occurred in Channahon, Illinois, which is located within Will and Grundy counties, which are within the Northern District of Illinois, Eastern Division. 28 U.S.C. § 93(a)(1). Nevertheless, "a substantial part of the events or omissions" did not occur in that venue, but only in the Eastern District of Louisiana.

file a response by April 22, 2014. Failure to file timely objections will waive the right of appeal.

                                        Respectfully submitted,

                                        s/Robert C. Mitchell
                                        ROBERT C. MITCHELL
                                        United States Magistrate Judge

Dated: March 25, 2014